## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LeAnne Feehan and John Feehan,

      Plaintiffs,

v.

Wal-Mart Stores Inc., d/b/a Walmart,

      Defendant.

Court File No.: 0:15-CV-3853 (PJS/JSM)

## DECLARATION OF
## KATHERINE A. BROWN HOLMEN

---

KATHERINE A. BROWN HOLMEN states of her own free will as follows:

1.  I am the attorney representing Plaintiffs in the above-referenced matter.

2.  I submit this Declaration in support of Plaintiffs' Motion for Remand.

3.  Attached hereto as EXHIBIT A is a true and correct copy of the Complaint served upon Defendant and the Court.

4.  Attached hereto as EXHIBIT B, pursuant to Minn. Stat. §480A.08(3), is a true and correct copy of the unpublished case *McGuire v. State Farm Fire & Cas. Co.*, No. 14-1220, 2015 WL 2373437 (D. Minn. May 18, 2015).

5.  Attached hereto as EXHIBIT C, pursuant to Minn. Stat. §480A.08(3), is a true and correct copy of the unpublished case *Jackson v. Johnson*, No. ELH-14-00011, 2014 WL 689390 (D. Md. Feb. 20, 2014).

6.  Attached hereto as EXHIBIT D, pursuant to Minn. Stat. §480A.08(3), is a true and correct copy of the unpublished case *H.B. Fuller Co. v. BRTT, Inc.*, No. 08-295, 2008 WL 1924182 (D. Minn. Apr. 29, 2008).

Pursuant to the laws of the United States of America, I declare under penalty of perjury that the foregoing are true and correct.

Dated: November 13, 2015

**DUDLEY AND SMITH, P.A.**

By: ~~signature~~

Katherine A. Brown Holmen
Attorney Reg. No: 0237401
101 East 5th Street, Suite 2602
Saint Paul, MN 55101
(651) 291-1717
kholmen@dudleyandsmith.com

**ATTORNEY FOR PLAINTIFFS**

STATE OF MINNESOTA

COUNTY OF WASHINGTON

DISTRICT COURT

TENTH JUDICIAL DISTRICT

---

LeAnne Feehan and John Feehan,

      Plaintiffs,

vs.

Wal-Mart Stores Inc., d/b/a Walmart,

      Defendant.

Case Type:  Personal Injury
Court File No.: _____

**COMPLAINT**

---

Plaintiffs, LeAnne Feehan and John Feehan, wife and husband, ("Plaintiffs") for their complaint and cause of action against Defendant Wal-Mart Stores Inc. d/b/a Walmart ("Defendant"), state and allege as follows:

1.      Plaintiffs, LeAnne Feehan and John Feehan, wife and husband, were, at all times relevant, residents of the State of Minnesota, County of Washington.

2.      On or about May 27, 2013, the Defendant owned and operated, and continues to own and operate, a Wal-Mart store in Woodbury, Minnesota.

3.      On or about May 27, 2013, Plaintiff was lawfully on said premises as a customer.

4.      At all times material, Defendant was vicariously liable for the negligent conduct of its employees, agents, apparent agents, servants, officers, and/or representatives.

5.      On or about May 27, 2013, Plaintiff LeAnne Feehan was standing at the checkout counter at said Walmart when another customer ran into her twice with a motorized scooter provided by Defendant.



**EXHIBIT**

**A**

tabbies

6. The driver, an elderly woman, appeared to be in an unsound mental state while operating the scooter.

7. Defendant Walmart supplies free motorized scooters for use in its stores without monitoring the drivers.

8. No employee checked to see if the driver of the scooter was physically or mentally capable of operating the scooter, nor was the driver given a tutorial.

9. The only instructions for operating Defendant's scooters are written on the scooters themselves, with no guarantee that they will be read or followed by potential drivers.

10. Defendant owed a duty to its customers to maintain a reasonably safe environment for shoppers.

11. Defendant breached this duty and negligently caused injury to Plaintiff LeAnne Feehan. Such negligence includes, but is not limited to, allowing customers to drive motorized scooters around its stores without checking to see if drivers are capable, failing to provide proper instruction or training to drivers, and failing to warn its customers about the dangers caused by others driving motorized scooters in the store, among other acts of negligence.

12. As a direct and proximate result of Defendant's negligence, Plaintiff LeAnne Feehan was severely and permanently injured.

13. As a direct and proximate result of Defendant's negligence, Plaintiff LeAnne Feehan has suffered severe pain, causing her to need strong pain medications and limit her physical activity.

14.     As a direct and proximate cause of Defendant's negligence, Plaintiff LeAnne Feehan has incurred, and will in the future incur, medical expenses related to the care and treatment of her injuries.

15.     Because of her ongoing pain, Plaintiff LeAnne Feehan has been unable to perform her job duties as a surgical nurse and she will likely be unable to work in that profession in the future due to her diminished physical capacity.

16.     As a direct and proximate result of Defendant's negligence, Plaintiff LeAnne Feehan has suffered severe physical and emotional pain and disability and will in the future suffer pain and disability related to her injuries.

17.     As a direct and proximate result of Defendant's negligence, Plaintiff LeAnne Feehan has lost wages and will in the future suffer a loss of earning capacity as a direct result of her injuries.

18.     Plaintiffs LeAnne Feehan and John Feehan are, and were at all times relevant, wife and husband.  As a direct result of the negligence of the Defendant, Plaintiff John Feehan has suffered a loss of companionship and services of Plaintiff LeAnne Feehan in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs prays for judgment against Defendant in the amount of $75,000.00 together with costs and disbursements incurred herein, and such other relief as the Court deems just and equitable.

Dated: September 23, 2015      **DUDLEY AND SMITH, P.A.**


By: _____
Katherine A. Brown Holmen
Attorney Reg. No: 0237401
101 East 5th Street
Suite 2602
Saint Paul, MN 55101
(651) 291-1717
ATTORNEY FOR PLAINTIFFS


<u>ACKNOWLEDGMENT</u>

The undersigned hereby acknowledges that sanctions may be awarded pursuant to Minn. Stat. §549.211.


_____
Katherine A. Brown Holmen, 0237401

2015 WL 2373437
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

Matthew McGUIRE, Plaintiff,

v.

STATE FARM FIRE AND
CASUALTY COMPANY, Defendant.

Civil No. 14–1220 (DWF/
LIB).   |   Signed May 18, 2015.

**Synopsis**
**Background:** Insured commenced action in state court against insurer, alleging breach of property insurance policy. Insurer removed action on diversity grounds.

**Holdings:** The District Court, Donovan W. Frank, J., adopting the report and recommendation of Leo I. Brisbois, United States Magistrate Judge, held that:

[1] single breach of contract claim did not satisfy amount in controversy requirement;

[2] boiler plate requests for costs, interest, and attorneys' fees in prayer for relief could not be counted towards amount in controversy; and

[3] insurer did not meet its burden to show that minimum amount in controversy that could be legally awardable by jury exceeded minimum amount necessary to support diversity jurisdiction.

Remanded.

West Headnotes (16)

**[1]    Removal of Cases**
    ☞ Allegations in Pleadings

When determining whether an action is removable, a court first must determine whether the complaint is removable on its face.

Cases that cite this headnote

**[2]    Removal of Cases**
    ☞ Evidence

Where the sufficiency of the amount alleged to be in controversy is questioned, the party invoking federal diversity jurisdiction must prove the requisite amount by a preponderance of the evidence; this rule applies even in a removed case where the party invoking jurisdiction is the defendant. 28 U.S.C.A. § 1332(a).

Cases that cite this headnote

**[3]    Federal Courts**
    ☞ Jurisdiction

When considering whether the amounts and claims alleged satisfy the required amount in controversy for diversity jurisdiction, a court looks to state law to determine the nature and extent of the right to be enforced as well as the state measure of damages and the availability of special and punitive damages. 28 U.S.C.A. § 1332(a).

Cases that cite this headnote

**[4]    Federal Courts**
    ☞ Weight and Sufficiency

When considering whether the amounts and claims alleged satisfy the required amount in controversy for diversity jurisdiction, a court must engage in a fact intensive inquiry to determine whether the preponderance of the evidence standard has been met; speculation on the part of the defendant as to the amount in controversy is not sufficient to meet the preponderance standard. 28 U.S.C.A. § 1332(a).

Cases that cite this headnote

**[5]    Removal of Cases**
    ☞ Condition of Case

Jurisdictional facts must be judged at the time of the removal when considering whether the amounts and claims alleged satisfy the required

EXHIBIT
B

amount in controversy for diversity jurisdiction. 28 U.S.C.A. § 1332(a).

Cases that cite this headnote

[6]     **Removal of Cases**
        ☞ Allegations and Prayers in Pleadings

        **Removal of Cases**
        ☞ Evidence

        If a party removing a case on diversity grounds has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is appropriate only if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount. 28 U.S.C.A. § 1332(a).

        Cases that cite this headnote

[7]     **Removal of Cases**
        ☞ Evidence

        Any doubt as to federal jurisdiction must be resolved in favor of remand.

        Cases that cite this headnote

[8]     **Removal of Cases**
        ☞ Insured and Insurer

        **Removal of Cases**
        ☞ Amount or Value Claimed or Involved

        **Removal of Cases**
        ☞ Want of Jurisdiction or of Cause for Removal

        Single claim of breach of property insurance policy under Minnesota law which sought as relief "an amount currently not exceeding $74,999.00, but yet to be determined, plus statutory interest, costs, and applicable attorneys' fees" did not satisfy amount in controversy requirement for diversity jurisdiction, and thus remand was required; although complaint did have one generic reference to insurer's bad faith, it could not be separate and actionable claim without prior leave of court. 28 U.S.C.A. § 1332(a); M.S.A. § 604.18.

        Cases that cite this headnote

[9]     **Removal of Cases**
        ☞ Amount or Value Claimed or Involved

        Boiler plate requests for costs, interest, and attorneys' fees in prayer for relief could not be counted towards amount in controversy in removed action alleging breach of property insurance policy under Minnesota law, since diversity jurisdiction statute expressly excluded both costs and interest from amount in controversy and there were neither allegations nor claims expressly pleaded on face of complaint that would support including claim for attorneys' fees. 28 U.S.C.A. § 1332(a).

        Cases that cite this headnote

[10]    **Removal of Cases**
        ☞ Amount or Value Claimed or Involved

        Potential award of attorneys' fees implicated by unpleaded bad faith claim against insurer under Minnesota law could not be included in calculation of amount in controversy in removed diversity case alleging breach of property insurance policy, since there was reasonable basis to support insurer's denial of fire insurance claim; record indicated that fire inspector concluded that fire in insured's manufactured home was incendiary in origin and that insurer had reason to believe that insured was having money troubles at time of fire. 28 U.S.C.A. § 1332; M.S.A. § 604.18.

        Cases that cite this headnote

[11]    **Federal Courts**
        ☞ Insurance Claims

        An unpleaded bad faith claim may not be considered when calculating the amount in controversy for determining the existence of diversity jurisdiction in an action alleging breach of an insurance policy. 28 U.S.C.A. § 1332.

        Cases that cite this headnote

[12]    **Pleading**
        ☞ As to Relief Prayed

In Minnesota, punitive damages claims may not be pursued except upon motion to amend the complaint granted by the court.

Cases that cite this headnote

**[13]    Federal Courts**
    Interest and Costs; Attorney Fees

Minnesota follows the general rule that only attorneys' fees that are available pursuant to contract or statute are included in the amount in controversy for diversity jurisdiction. 28 U.S.C.A. § 1332.

Cases that cite this headnote

**[14]    Removal of Cases**
    Evidence

Insurer did not meet its burden to show by preponderance of evidence at time of removal of action from state court alleging breach of property insurance policy under Minnesota law that minimum amount in controversy that could be legally awardable by jury exceeded minimum amount necessary to support diversity jurisdiction, notwithstanding insured's own pre-suit personal subjective lay description of his belief as to value of property he lost in fire giving rise to action, where maximum legally recoverable value to insured of damages flowing from alleged breach of contract based on what was in fact actually known by insurer at time of removal did not exceed $68,000. 28 U.S.C.A. § 1332(a).

Cases that cite this headnote

**[15]    Damages**
    Mode of Estimating Damages in General

In Minnesota, the measure of damages for a breach of contract claim is those damages flowing from the alleged breach.

Cases that cite this headnote

**[16]    Federal Courts**
    Matter in Dispute and Amount or Value Claimed or Involved

The amount in controversy as required for diversity jurisdiction is to be determined by the value to the plaintiff of the right sought to be enforced; in this determination, a plaintiff's evaluations of the value of his own claim are relevant but not necessarily dispositive as to the amount in controversy.

Cases that cite this headnote

**Attorneys and Law Firms**

Alan B. Fish, Alan B. Fish, PA, Roseau, MN, for Plaintiff.

C. Todd Koebele, Scott G. Williams, HKM Law Group, St. Paul, MN, for Defendant.

### ORDER ADOPTING REPORT
### AND RECOMMENDATION

DONOVAN W. FRANK, District Judge.

**\*1** The above matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Leo I. Brisbois dated April 17, 2015. (Doc. No. 27.) No objections have been filed to that Report and Recommendation in the time period permitted. The factual background for the above-entitled matter is clearly and precisely set forth in the Report and Recommendation and is incorporated by reference.

Based upon the Report and Recommendation of the Magistrate Judge and upon all of the files, records, and proceedings herein, the Court now makes and enters the following:

### ORDER

1. Magistrate Judge Leo I. Brisbois's April 17, 2015 Report and Recommendation (Doc. No. [27] ) is **ADOPTED.**

2. This case is **REMANDED** to the Roseau County District Court of the Ninth Judicial District of the State of Minnesota for lack of subject matter jurisdiction.

## REPORT AND RECOMMENDATION

LEO I. BRISBOIS, United States Magistrate Judge.

This matter comes before the undersigned United States Magistrate Judge upon the Order of Referral, [Docket No. 16], for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

For reasons outlined below, the Court recommends that the present case be remanded to the Roseau County District Court of the Ninth Judicial District of Minnesota for lack of subject matter jurisdiction.

## I. BACKGROUND

This case arises from a fire that damaged Plaintiff Matthew McGuire's ("Plaintiff") manufactured home, which was insured under a policy issued by Defendant State Farm Fire and Casualty Company ("Defendant"). (Amended Complaint, [Docket No. 8], 1, ¶¶ 1–2, 4). After Defendant refused to pay Plaintiff's insurance claim regarding the fire, Plaintiff filed suit in the District Court of Roseau County, in the Ninth Judicial District of the State of Minnesota, alleging breach of the insurance contract. (Notice of Removal, [Docket No. 1–1], Ex. A, 6).

On April 22, 2014, Defendant removed the case to the United States District Court for the District of Minnesota on the asserted basis of diversity of citizenship. (Notice of Removal, [Docket No. 1–1], 2).

On January 15, 2015, the District Court referred the case to this Court for a report and recommendation regarding the issue of whether the amount in controversy exceeds the minimum amount required to support diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Order of Referral, [Docket No. 16], 2).

## II. STATEMENT OF FACTS

On September 17, 2013, a fire occurred in Plaintiff's manufactured home. (Amended Complaint, [Docket No. 8], 1, ¶ 1). The fire destroyed the home and Plaintiff's personal property inside the home. (Id. at ¶ 4). The manufactured home and personal property were insured under a policy issued by Defendant. (Id. at ¶ 2).

On October 15, 2013, Plaintiff submitted a Personal Property Inventory form to Defendant, listing various items of personal property damaged by the fire, for which Plaintiff estimated the cost of replacement at $6,670.00. (Affidavit of Scott G. Williams, [Docket No. 201], Ex. B, 4–8). On November 7, 2013, Plaintiff submitted a Sworn Statement of Loss form to Defendant claiming $72,000 for the cost of the damaged manufactured home. (Affidavit of Scott G. Williams, [Docket No. 20–1], Ex. A, 2). Plaintiff also asserts that he has incurred $600 per month in living expenses since the fire and has lost $250 per month in rental income from a tenant. (Affidavit of Scott G. Williams, [Docket No. 20–4], Ex. L., 16). Defendant subsequently refused to pay Plaintiff's claim under the insurance policy. (Amended Complaint, [Docket No. 8], 1, ¶ 8).

*2 On April 8, 2014, Plaintiff filed the present case in the District Court of Roseau County. (Notice of Removal, [Docket No. 1], 1). Defendant removed the case to the United States District Court for the District of Minnesota on the asserted basis of diversity of citizenship. (Id. at 2). On May 13, 2014, Plaintiff filed his Amended Complaint, [Docket No. 8], which is the operative complaint.

In his Amended Complaint, Plaintiff alleges that he incurred losses that were covered by an insurance policy issued by Defendant in the form of housing expenses, personal property, and "other compensable damages." (Id. at 1). Plaintiff also alleges that "Defendant has not acted in good faith" in refusing to pay Plaintiff's claim under the insurance policy. (Id. at 2). In his prayer for relief, Plaintiff stated that he is seeking a judgment from Defendant in "an amount currently not exceeding $74,999.00, but yet to be determined, plus statutory interest, costs, and applicable attorneys' fees."(Id.).

At the initial pretrial conference following removal, Plaintiff contended that the Court did not have subject matter jurisdiction over this case, asserting that the amount in controversy was less than $75,000. After the initial pretrial conference, the Court instructed Plaintiff to file a motion to remand for lack of subject matter jurisdiction no later than June 25, 2014. (Minute Entry, [Docket No. 12] ). Plaintiff did not, however, file such a motion.

On January 15, 2015, the District Court *sua sponte* referred the matter to this Court for a report and recommendation regarding the issue of whether the amount in controversy meets or exceeds the minimum amount required to support

diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Order of Referral, [Docket No. 16], 2).

## III. DIVERSITY JURISDICTION

The District Court has referred the present matter for a report and recommendation regarding whether diversity jurisdiction exists. (Order of Referral, [Docket No. 16], 2). As there is no dispute that the parties are citizens of different states, the only issue presently before the Court is whether the amount in controversy exceeds the $75,000 threshold required to support diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

### A. Standard of Review

Under 28 U.S.C. § 1332(a), district courts have original jurisdiction over cases between citizens of different states in which the amount in controversy exceeds $75,000.

**[1]** **[2]** When determining whether an action is removable, the Court must, first, "determine whether the complaint is removable on its face."*Wiemers v. Good Samaritan Soc'y,* 212 F.Supp.2d 1042, 1045 (N.D.Iowa 2002) (citing *McCorkindale v. American Home Assur. Co./A.I.C.,* 909 F.Supp. 646, 653–55 (N.D.Iowa 1995)). Where, as here, the sufficiency of the amount alleged to be in controversy is questioned, "the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence."*Bell v. Hershey Co.,* 557 F.3d 953, 956 (8th Cir.2009) (citing *Advance Am. Servicing of Ark., Inc. v. McGinnis,* 526 F.3d 1170, 1173 (8th Cir.2008)). This rule applies "even in a removed case where the party invoking jurisdiction is the defendant."*James Neff Kramper Family Farm P'ship v. IBP, Inc.,* 393 F.3d 828, 831 (8th Cir.2005).

**\*3** **[3]** **[4]** **[5]** In considering whether the amounts and claims alleged satisfy the required amount in controversy, the court looks to state law to determine the nature and extent of the right to be enforced as well as the state measure of damages and the availability of special and punitive damages. *See Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 352–53, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). The Court must engage in a "fact intensive" inquiry to determine whether the preponderance of the evidence standard has been met.*Bell,* 557 F.3d at 959. Speculation on the part of the defendant as to the amount in controversy is not sufficient to meet the preponderance standard. *See, e.g., Thomas v. Southern Pioneer Life Ins. Co.,* 2009 WL 4894695, \*2 (E.D.Ark. Dec.

11, 2009); *Nowak v. Innovative Aftermarket Sys.,* 2007 WL 2454118 (E.D.Mo. Aug. 23, 2007). Jurisdictional facts must be judged at the time of the removal. *Dyrda v. Wal–Mart Stores, Inc.,* 41 F.Supp.2d 943, 946 (D.Minn.1999).

**[6]** **[7]** If "the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount."*Bell,* 557 F.3d at 956 (citing *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir.2006)). Any doubt as to federal jurisdiction must be resolved in favor of remand. *In re Prempro Prods. Liab. Litig.,* 591 F.3d 613, 620 (8th Cir.2010).

### B. Analysis

#### 1. Face of the Complaint

In determining whether a case is removable, the Court first looks to the face of the Complaint. *Wiemers,* 212 F.Supp.2d at 1045.

**[8]** Plaintiff's Amended Complaint expressly alleges only a single claim, *i.e.,* breach of contract, in this case, the insurance policy. In relation to that claim, Plaintiff seeks as relief "an amount currently not exceeding $74,999.00, but yet to be determined, plus statutory interest, costs, and applicable attorneys' fees."(Amended Complaint, [Docket No. 8], 2).

By the phrasing of his prayer for relief for damages allegedly arising out of the breach of contract claim, Plaintiff attempts to expressly demonstrate that his claim is for less than $75,000. Defendant contends, however, that the phrasing indicates that the amount in controversy is more than $75,000.

Defendant first argues that Plaintiff's mere, generic and singular reference to bad faith in his Amended Complaint requires the Court to consider as part of the amount in controversy potential statutory penalties pursuant to Minn.Stat. § 604.18[1] because the Plaintiff might have been able to seek leave of Court to allege a claim under the statute after removal. The Court disagrees.

The reference to bad faith in the Amended Complaint is not, nor can it be without prior leave of Court, a separate and actionable claim under Minn.Stat. § 604.18 for statutory

penalties and attorneys' fees.Minn.Stat. § 604.18, Subd. 4(a) ("Upon commencement of a civil action by an insured against an insurer, the complaint must not seek a recovery under this section."). Rather Plaintiff's singular reference to bad faith is simply part of the Amended Complaint's allegation and colorful description of the breach of contract claim involving the insurance policy based upon Defendant's denial of payment on any of Plaintiff's losses resulting from the fire.[2]

**\*4** **[9]** **[10]** **[11]** **[12]** **[13]** Nor are Plaintiff's boiler plate requests for costs, interest, and attorneys' fees in his prayer for relief to be counted towards the amount in controversy in the present case. The diversity jurisdiction statute expressly excludes both costs and interest from the amount in controversy. 28 U.S.C. § 1332(a). In addition, Minnesota follows the general rule that only attorneys' fees that are available pursuant to contract or statute are included in the amount in controversy. *See State of Missouri ex rel. Pemiscot County, Mo. v. Western Sur. Co.,* 51 F.3d 170, 173 (8th Cir.1995); *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 714 (Minn.1991). There are neither allegations nor claims expressly pled on the face of the complaint that would support including a claim for attorneys' fees in calculating the amount in controversy to support diversity jurisdiction.[3]

Therefore, on the face of the Amended Complaint, it is certainly at least ambiguous and not readily discernible that the minimum amount in controversy could be met at the time of removal of the case from state court in order to support diversity jurisdiction. Accordingly, the Court must move to the second step of the analysis, wherein Defendant, "the party invoking federal jurisdiction[,] must prove the requisite amount by a preponderance of the evidence." *Bell,* 557 F.3d at 956.

### 2. Legally Recoverable Damages

**[14]** **[15]** As discussed above, Plaintiff's Amended Complaint alleges only a single claim of breach of contract. In Minnesota, the measure of damages for a breach of contract claim is those damages flowing from the alleged breach. *Wild v. Rarig,* 302 Minn. 419, 440, 234 N.W.2d 775, 789 (1975) (holding that, absent an independent tort, a plaintiff alleging a breach of contract may only seek to recover the damages flowing from the breach).

**[16]** Defendant first argues that, when determining the potential damages associated with the alleged breach of contract, the Court must look to the estimates of loss that Plaintiff submitted to Defendant when initially submitting his insurance claim. The Eighth Circuit follows the principle that the amount in controversy is to be determined by the value to the plaintiff of the right sought to be enforced. *Schubert v. Auto Owners Ins. Co.,* 649 F.3d 817, 821 (8th Cir.2011) (citing *Advance Am. Servicing,* 526 F.3d at 1173). In this determination, a plaintiff's evaluations of the value of his own claim are relevant but not necessarily dispositive as to the amount in controversy. *See In re Minnesota Mut. Life Ins. Co. Sales Practices Litig.,* 346 F.3d 830, 835 (8th Cir.2003) (noting that a parties' letter containing information regarding their evaluation of the value of their claims was relevant to determining the amount in controversy, but not reaching the issue of whether the letter alone was sufficient to establish the amount); *State of Mo. ex rel. Pemiscot Cnty.,* 51 F.3d at 173 (noting precedent holding that a plaintiff's allegations of requisite jurisdictional amount are not necessarily dispositive as to the amount in controversy).

**\*5** Plaintiff's claim for breach of contract is based on Defendant's refusal to pay his claims under the insurance policy for 1) the damages to the manufactured home (Coverage A); 2) the replacement cost of his personal property (Coverage B); and, 3) other compensable damages (Coverage C). (Pl.'s Amended Complaint, [Docket No. 8], 1).

*Manufactured Home (Coverage A).* Defendant argues the Court should determine the value to Plaintiff of the alleged breach to pay the claim under Coverage A by Plaintiff's estimate of the value of his manufactured home at $72,000. However, the evidence presently in the record before the Court indicates that Plaintiff's ability to recover for the damage to his home under Coverage A could in no event exceed the policy limit of $43,100. (*See,* Affidavit of Scott G. Williams, [Docket No. 20], Ex. C, 3, 11). In any event, the actual value of the building was known to all parties at the time of removal as not possibly exceeding the policy limits in light of the original purchase price of $52,000 and the fact that it had depreciated in value during the five years that Plaintiff had lived in it. (*See* Affidavit of Scott G. Williams, [Docket No. 20–4], Ex. L, 15) (value of the home at initial purchase). The best measure of the value to Plaintiff of his ability to recover under Coverage A at the time of removal was the policy limit of $43,100.

*Personal Property (Coverage B).* Defendant next contends the Court should determine the value to Plaintiff of his ability to recover for the loss of his personal property under Coverage B as the policy limits under Coverage B of $43,100. However, Plaintiff has not attempted to make a claim in excess of the policy limits. Rather, at the time of removal Plaintiff submitted a proof of loss form containing an inventory of his lost personal property, and even accepting Plaintiff's lay opinion of the value of his destroyed personal property in that inventory form, the value to Plaintiff had not changed as of the time of removal and did not exceed $7,000.

*Other Compensable Damages (Coverage C).* Plaintiff's assertions that he is entitled to other compensable damages resulting from the alleged breach of the insurance contract are based on his claims for increased living expenses and lost rental income under Coverage C. At the time of removal, Plaintiff claimed that he was incurring $600 per month in additional living expenses and a loss of $250 per month in lost rental income. These monthly amounts are also equal to the monthly limits available under the insurance policy. It is uncertain how much time might pass between the date of the fire and the resolution of Plaintiff's claim of breach of contract. However, the insurance policy itself limits the amount Plaintiff can recover under Coverage C to twenty-four (24) months of increased living expenses and twelve (12) months of lost rental income. (*See* Affidavit of Scott G. Williams, [Docket No. 20], Ex. C, 11). Accordingly, at the time of removal the most generous measure of the value to Plaintiff of his ability to recover under Coverage C is the maximum policy benefit potentially available to Plaintiff. The maximum Plaintiff could ever attempt to recover for increased living expenses is $14,400, and for lost rental income is $3,000.

**\*6** Finally, relying on *Christensen v. Owners Ins. Co.,* No. CIV. 14–4757 (RHK/JJK), 2015 WL 574522, at \*2 (D.Minn. Feb. 11, 2015), Defendant argues that the Court should simply base its determination as to the amount in controversy on Plaintiff's subjective belief as to the value of his fire losses and the combined coverage limits under the policy, notwithstanding what was actually known to Defendant about the limits to Plaintiff's personal damages, and even where that claim obviously exceeds the low limits of the operative insurance policy. However, in *Christensen* the District Court noted that the high coverage limits available there, which were "well in excess of $75,000," which supported the plaintiff's lay valuation of his own claim.

*Id.* In the present case, by contrast, the low policy limits directly weigh against Plaintiff's lay valuation of his claim for purposes of Defendant's assertion that the amount in controversy was satisfied at the time of removal because the Plaintiff could not ever recover in excess of the low policy limits even if successful on his sole breach of contract claim. When determining the propriety of removal, any doubts as to the existence of subject matter jurisdiction *must* be resolved in favor of remand. *In re Prempro Prods.,* 591 F.3d at 620.

Based on all of the foregoing, the maximum legally recoverable value to Plaintiff of the damages flowing from the alleged breach of contract based on what was in fact actually known by Defendant at the time of removal did not exceed $68,000; which is well below the $75,000 minimum amount in controversy to support removal of the case to Federal Court on the basis of diversity jurisdiction.

In the present case, notwithstanding Plaintiff's own pre-suit personal subjective lay description of his belief as to the value of the property he lost in the fire giving rise to this case, the Defendant, State Farm Fire and Casualty Company, has not met its burden to show by a preponderance of the evidence that, at the time of removal of this case from state court, the minimum amount in controversy that could be legally awardable by a jury, exceeded the minimum amount necessary to support diversity jurisdiction. *See Kopp v. Kopp,* 280 F.3d 883, 885 (8th Cir.2002) ("[A]n amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it").

**IV. CONCLUSION**
Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

> 1. This case be **REMANDED** to the Roseau County District Court of the Ninth Judicial District of the State of Minnesota for lack of subject matter jurisdiction.

Dated: April 17, 2015.

**All Citations**

--- F.Supp.3d ----, 2015 WL 2373437

Footnotes

1    In pertinent part, Minn.Stat. § 604.18 sets forth:

        **Subd. 2. Liability.**(a) The court may award as taxable costs to an insured against an insurer amounts as provided in subdivision 3 if the insured can show:

        (1) the absence of a reasonable basis for denying the benefits of the insurance policy; and

        (2) that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis for denying the benefits of the insurance policy.

        ....

        **Subd. 3. Damages and costs.**(a) In addition to prejudgment and postjudgment interest and costs and disbursements allowed under law, the court may award an insured the following taxable costs for a violation of subdivision 2:

        (1) an amount equal to one-half of the proceeds awarded that are in excess of an amount offered by the insurer at least ten days before the trial begins or $250,000, whichever is less; and

        (2) reasonable attorney fees actually incurred to establish the insurer's violation of this section.

        Minn.Stat. § 604.18.

2    The operative Amended Complaint contains no detailed factual allegations of the type which would be expected or necessary for an attempt to support a claim under Minn.Stat. § 604.18.

3    The only *potential* basis for an award of attorneys' fees is Defendant's conclusory argument that Plaintiff *might have* amended his complaint to add a "bad faith" claim based on Minn.Stat. § 604.18, upon a prevailing claim of which a plaintiff may obtain an award of attorneys' fees. *See*Minn.Stat. § 604.18, Subd. 3(a)(2). Plaintiff has not pled such a claim on the face of his complaint. Even assuming solely for the sake of argument that Plaintiff had pled such a claim, the Court concludes that a potential award of attorneys' fees implicated by such a claim would not be included in the calculation of the amount in controversy. Claims for statutory penalties are closely scrutinized when determining the amount in controversy, to ensure that the limits on diversity jurisdiction are closely followed. *See State of Mo. ex rel. Pemiscot County,* 51 F.3d at 173.

        There is little case law regarding whether an unpled bad faith claim pursuant to Minn.Stat. § 604.18 may be considered when calculating the amount in controversy for determining the existence of diversity jurisdiction. However, this Circuit's case law with regard to unpled punitive damages claims is analogous and instructive. In Minnesota, punitive damage claims may not be pursued except upon motion to amend the complaint granted by the Court. In *OnePoint Solutions, LLC v. Borchert,* the Eighth Circuit considered a Minnesota case where establishing the amount in controversy depended on whether an unpled punitive damages claim could be considered as part of the calculation. *OnePoint Solutions v. Borchert,* 486 F.3d 342, 350 (8th Cir.2007). The Eighth Circuit reasoned that the jurisdictional question in that case was "whether a fact finder might legally conclude that" the "damages are greater than the requisite amount[.]"*Id.*The Eighth Circuit concluded that "the federal court [had] jurisdiction over OnePoint's case unless, as a matter of law, [the plaintiff] could not recover punitive damages ..., the amount of damages [the plaintiff] could recover is fixed below the jurisdictional amount, or no reasonable jury could award damages totaling more than $75,000 in the circumstances that the case presents."*Id.*

        To obtain an award of attorneys' fees under Minn.Stat. § 604.18, Subd. 3(a)(2), a plaintiff must successfully plead and prove a claim of bad faith, which requires a showing that the defendant insurance company did not have a reasonable basis to deny benefits under the insurance policy and either knew that it did not have a reasonable basis to deny benefits or acted in reckless disregard of the lack of a reasonable basis to deny benefits. Minn.Stat. § 604.18, Subd. 2. The record presently before the Court indicates that a fire inspector concluded prior to removal of the case to this Court that the fire in Plaintiff's manufactured home was incendiary in origin and that Defendant had reason to believe that Plaintiff was having money troubles at the time of the fire. (*See* Def's Statement of the Case, [Docket No. 9], 2–5; Affidavit of Scott G. Williams, [Docket No. 20–4], Ex. L, 14). Evidence that a fire was incendiary in origin and that the insured was having money troubles is a reasonable basis to support an insurer's denial of a fire insurance claim. *See Quast v. Prudential Prop. & Cas. Co.,* 267 N.W.2d 493, 495 (Minn.1978). As such, under the analytical standard set forth in *OnePoint,* the Court will not here consider any attorneys' fees award that speculatively might have been attributable to a purely theoretical and in this case actually unpled bad-faith claim when determining the amount in controversy.

**End of Document**        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 689390
Only the Westlaw citation is currently available.
United States District Court,
D. Maryland.

Barbara J. JACKSON, Plaintiff,
v.
James T. JOHNSON, et al., Defendants.

Civil Action No. ELH–14–
00011. | Feb. 20, 2014.

### MEMORANDUM OPINION

ELLEN L. HOLLANDER, District Judge.

**\*1** On or about June 10, 2013, plaintiff Barbara Jackson filed suit in the Circuit Court for Washington County, Maryland, against defendants James Johnson and Young Manufacturing Co., Inc. ("YMCI"), alleging damages of $75,000 arising out of a motor vehicle accident on June 9, 2010. *See* ECF 2 ("Complaint"). Defendants removed this action to the United States District Court for the District of Maryland on January 3, 2014, asserting subject matter jurisdiction on the basis of diversity of citizenship. *See* ECF 1 ("Notice of Removal") ¶¶ 8, 11; 28 U.S.C. § 1332(a). The question now before the Court is whether the amount allegedly in controversy ($75,000) satisfies the jurisdictional requirement or, instead, whether a remand to state court is required.

Two motions are now pending: plaintiff's Motion to Remand to State Court (ECF 18, "Motion to Remand") and defendants' response, titled "Consent to Motion to Remand to State Court" (ECF 20, "Consent Motion"). No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I conclude that this Court lacks subject matter jurisdiction. Accordingly, I will grant plaintiff's Motion to Remand and remand the case to the Circuit Court for Washington County.

### A. Legal Standard

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole,* 531 F.3d 263, 274 (4th Ci r.2008) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)).

The "burden of establishing subject matter jurisdiction is on ... the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh,* 609 F.3d 359, 362 (4th Cir.2010); *accord McBurney v. Cuccinelli,* 616 F.3d 393, 408 (4th Cir.2010). Thus, "[i]f a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." *Strawn v. AT & T Mobility LLC,* 530 F.3d 293, 296 (4th Cir.2008). Even in the absence of a challenge to jurisdiction, federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists...." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010).

### B. Background

Suit arises from a motor vehicle accident that occurred on June 9, 2010, when a truck driven by defendant Johnson and owned by defendant YMCI collided with plaintiff's vehicle. *See* ECF 2. Plaintiff's Complaint contains three state law claims: "Negligence" against Johnson (Count I); "Agency" against YMCI (Count II); and "Negligent Entrustment" against YMCI (Count III). Plaintiff seeks damages of $75,000, jointly and severally, plus costs. *See id.*

**\*2** As noted, defendants removed the case to this Court on January 3, 2014, asserting subject matter jurisdiction on the basis of diversity of citizenship. *See* Notice of Removal ¶¶ 8, 11. By statute, diversity jurisdiction applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between .... citizens of different States." 28 U.S.C. § 1332(a)(1).

In the Notice of Removal, defendants explain that, in the circuit court, they moved for partial summary judgment in November 2013, arguing at that time that because the Complaint's *ad damnum* clause sought damages of exactly $75,000, plaintiff should be limited to damages of $75,000. ECF 1 ¶¶ 6–7; *see* ECF 5 (Defendants' Motion for Partial Summary Judgment). Plaintiff opposed defendants' partial summary judgment motion, asserting that such a determination was premature, and further arguing that, if a


EXHIBIT
C

jury awarded plaintiff more than $75,000 in damages, she could "file a post-trial motion to amend her complaint to the amount of the rendered verdict." *See* ECF 7 ("Plaintiff's Response to Defendants' Memorandum in Support of Their Motion for Summary Judgment"). By Order of December 4, 2013, the circuit court denied defendants' motion, without articulating the basis for its decision. ECF 10. Removal followed on January 3, 2014. [1]

In a Memorandum to Counsel docketed January 13, 2014, I indicated that, based upon my review of relevant authority, it appeared that the jurisdictional amount-in-controversy requirement was not satisfied, because plaintiff sought damages of exactly $75,000, and not damages in excess of $75,000. *See* ECF 17. Further, I explained the Court's independent obligation to verify subject matter jurisdiction, and set forth authority in support of my concerns. Nevertheless, I invited the parties to submit supplemental memoranda and responses, addressing whether this Court has subject matter jurisdiction.

Subsequently, plaintiff filed the Motion to Remand, in which she reiterated her view that the amount in controversy does not exceed $75,000 for purposes of diversity jurisdiction. ECF 18. Plaintiff also incorporated by reference the analysis contained in the Court's Memorandum to Counsel (ECF 17) docketed on January 13, 2014. *See* ECF 18 ¶¶ 4–5. In response, defendants filed their Consent Motion, in which they agree that remand is warranted. *See* ECF 20. Notably, in that filing, defendants also take the position that plaintiff has conceded that "the damages prayed do not exceed $75,000," which, in defendants' view, is "contrary to the representation and argument made in the State Court...." *Id.* ¶ 5.

### C. Discussion

As an initial matter, there is no apparent barrier to diversity jurisdiction based on the citizenship of the parties. The Complaint states that plaintiff is a "resident" of Pennsylvania. *Id.* ¶ 1. That allegation does not establish plaintiff's *citizenship,* because a natural person's "state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile, and the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Axel Johnson, Inc. v. Carroll Carolina Oil Co.,* Inc., 145 F.3d 660, 663 (4th Cir.1998) (internal citation omitted). In other words, for "purposes of diversity jurisdiction, residency is not sufficient to establish

citizenship." *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.,* 549 F.3d 932, 937 n. 2 (4th Cir.2008). However, in her Motion to Remand, plaintiff confirms that she is a citizen of Pennsylvania. ECF 18 ¶ 3. As for defendants, the Notice of Removal establishes that Johnson is a citizen of Kentucky, and that YMCI is a citizen of Kentucky for purposes of diversity jurisdiction. *See* ECF 2 ¶¶ 3–4. As a result, complete diversity exists between plaintiff and defendants.

**\*3** However, diversity jurisdiction also requires that "the matter in controversy *exceeds the sum or value of $75,000,* exclusive of interest and costs...." 28 U.S.C. § 1332(a) (1) (emphasis added). Accordingly, by requesting exactly $75,000 in her Complaint, plaintiff has sought an amount of damages just below the minimum required for diversity jurisdiction. *See id.; Freeland v. Liberty Mut. Fire Ins. Co.,* 632 F.3d 250, 252–53 (6th Cir.2011) ("[T]he amount in controversy in this case is $75,000 exactly one penny short of the jurisdictional minimum of the federal courts."); *accord Void v. One West Bank,* 2011 W L 3240478, at * 2 (D.Md. July 27, 2011) (Chasanow, J.) (citing *Freeland* ).

In order to establish the amount in controversy for purposes of diversity jurisdiction, "the sum claimed by plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938); *accord Choice Hotels Intern., Inc. v. Shiv Hospitality, L.L.C.,* 491 F.3d 171, 176 (4th Cir.2007) ("The black letter rule 'has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in "good faith." ' ") (quoting *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353 (1961)); *Joy Family Ltd. Partnership v. United Financial Banking Companies, Inc.,* 2013 W L 4647321, at * 6 (D.Md.2013); *see also Dow v. Jones,* 232 F.Supp.2d 491, 497–98 (D.Md.2002) ("It is well established that the sum claimed in the plaintiff's complaint determines the amount in controversy, barring bad faith or the legal impossibility of recovering such an amount."). Indeed, "the Supreme Court has held that a plaintiff with a claim potentially exceeding $75,000 'may resort to the expedient of suing for less than the jurisdictional amount, and though [the plaintiff] would justly be entitled to more, the defendant cannot remove.' " *Mary L. Martin, Ltd. v. State Auto Property and Cas. Ins. Co.,* 2013 W L 2181206, at * 2 (D.Md. May 17, 2013) (quoting *St. Paul Mercury Indem. Co.,* 303 U.S. at 294).

Of import here, "[w]here a plaintiff claims a specific amount in damages that is less than $75,000, removal is proper only if

the defendant can prove to a 'legal certainty' that the plaintiff would actually recover more than that if she prevailed." *Momin v. Maggiemoo's Intern., L.L.C.,* 205 F.Supp.2d 506, 509 (D.Md.2002). In contrast, where "a plaintiff's complaint does not allege a specific amount in damages, a defendant need only prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *Id.* at 509–10. To be sure, *Momin* speaks only of situations in which the specified amount "is less than $75,000." 205 F.Supp.2d at 509. Nevertheless, the plain language of 28 U.S.C. § 1332(a)(1), which requires damages to "exceed[ ] the sum or value of $75,000," and relevant case law, including *Freeland,* 632 F.3d at 252–53, confirm that a complaint alleging exactly $75,000 in damages should be considered as a claim that does not exceed $75,000. And, because plaintiff's Complaint seeks a specified amount of damages, the "legal certainty" standard applies.

**\*4** In the Circuit Court for Washington County, plaintiff asserted that, if a Maryland jury were to award damages in excess of the $75,000 sought in her Complaint, plaintiff could "file a post-trial motion to amend her complaint to the amount of the rendered verdict." *See* ECF 7. In particular, a Committee Note to Maryland Rule 2–341(b), which governs amendment of pleadings with leave of court, states: "The court may grant leave to amend the amount sought in a demand for a money judgment after a jury verdict is returned." *Id.* (citing *Falcinelli v. Cardascia,* 339 Md. 414, 663 A.2d 1256 (1995)). However, the Committee Note's text indicates that, even if a jury awards damages above the amount sought, leave to amend a complaint following a verdict is not guaranteed. As the federal district court explained in *Gallagher v. Federal Signal Corp.,* 524 F.Supp.2d 724 (D.Md.2007), "Maryland Rule of Civil Procedure 2–341(b) allows [a] plaintiff to seek leave to amend [the] complaint to reflect a higher *ad damnum* amount in the event that a jury awards more than $74,000. Permission to amend the *ad damnum* clause is discretionary, however, and there is no requirement that the court permit an amendment." *Id.* at 728 (concluding that defendant failed to prove to a legal certainty that recovery would exceed the $74,000 amount sought in the complaint). Thus, if a plaintiff deliberately requests damages of $75,000 to avoid removal to federal court, such a plaintiff acts at his or her peril if damages in excess of that sum are awarded, because a Maryland court is not required to permit amendment of the *ad damnum* clause.

In their Consent Motion, defendants do not address Rule 2–341(b) or any other authority concerning post-trial

amendment of a complaint. Nor do they seek to establish that, if plaintiff's claims prove successful, her recovery for damages arising out of the alleged accident will necessarily exceed $75,000. Instead, it seems that defendants are again attempting, as they did before the Circuit Court for Washington County, to limit plaintiff's recovery to no more than $75,000. In particular, defendants construe plaintiff's Motion to Remand as having conceded that "the damages prayed do not exceed $75,000," which, in defendants' view, is "contrary to the representation and argument made in the State Court" by plaintiff. Consent Motion ¶ 5. However, it would appear, at least based on the filings available to this Court, that plaintiff has maintained, consistently, that (1) she seeks $75,000 in damages, and (2) her damages are not necessarily capped at $75,000 if a jury awards damages in excess of that amount and a court grants a post-trial motion to amend her complaint to reflect the higher damages award. ECF 7; *see also* ECF 18.

In any event, it is unnecessary for this Court to determine whether defendants are raising such an argument or whether plaintiff has made any such concession. Rather, it is sufficient to conclude that defendants have failed to show to a "legal certainty" that, if plaintiff were to prevail, she would recover more than $75,000. *See, e.g., Gallagher,* 524 F.Supp.2d at 728; *Delph v. Allstate Home Morg., Inc.,* 478 F.Supp.2d 852, 854 (D.Md.2007). Therefore, remand to the circuit court is required. Accordingly, I will grant plaintiff's Motion to Remand (ECF 18), based on a lack of subject matter jurisdiction. A nd, I will deny defendants' motion (ECF 20) as moot.

### Conclusion

**\*5** For the foregoing reasons, I conclude that this Court lacks subject matter jurisdiction as to this case. Pursuant to 28 U.S.C. § 1447(c), the case shall be remanded to the Circuit Court for Washington County. An Order implementing this ruling follows.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the Court finds that it lacks subject matter jurisdiction over this dispute. Accordingly, it is, this 20th day of February, 2014, by the United States District Court for the District of Maryland, ORDERED:

1. Plaintiff's Motion to Remand to State Court (ECF 18) is GRANTED;

2. Defendants' Consent to Motion to Remand to State Court (ECF 20) is DENIED, as moot;

3. The case is REMANDED to the Circuit Court for Washington County for all further proceedings; and

4. The Clerk is directed to CLOSE this case.

**All Citations**

Not Reported in F.Supp.2d, 2014 WL 689390

Footnotes

1    Defendants maintain that removal occurred within 30 days of the circuit court's decision establishing that the amount in controversy could exceed $75,000. Thus, they contend that their removal was timely. *See* Notice of Removal ¶ 12. This Memorandum Opinion does not address the timeliness of the removal.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 1924182
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

H.B. FULLER COMPANY, a Minnesota Corporation,
and Roanoke Companies Group, Inc. f/k/a SCB
Sub, Inc., a Minnesota corporation, Plaintiffs,
v.
BRTT, INC. f/k/a Roanoke Companies Group, Inc.,
a Missouri corporation, CBRTT, Inc. f/k/a/ Chicago
Adhesive Products Co., an Illinois corporation,
William J. Kyte, John H. Johntz, Jr., Richard
F. Tripodi, and Thomas K. Jones, Defendants.

Civil No. 08–295 (DWF/AJB). | April 29, 2008.

**Attorneys and Law Firms**

Charles B. Rogers, Esq., Jason R. Asmus, Esq., Samuel L. Hanson, Esq., and Timothy G. Gelinske, Esq., Briggs & Morgan, P.A., counsel for Plaintiffs.

Edward B. Ruff, III, Esq., Mary H. Cronin, Esq., Michael P. Turiello, Esq., and Priya Krishnan Jesani, Esq., Pretzel & Stouffer Chartered; and Gerald H. Fornwald, Esq., Robert R. Weinstine, Esq., Tiffany A. Blofield, Esq., and William A. McNab, Esq., Winthrop & Weinstine, PA, counsel for Defendants.

### MEMORANDUM OPINION AND ORDER

DONOVAN W. FRANK, District Judge.

### INTRODUCTION

*1 This matter is before the Court pursuant to a Motion to Remand brought by Plaintiffs H.B. Fuller Co. ("H.B.Fuller") and Roanoke Companies Group, Inc. ("Roanoke"). For the reasons stated below, the Court grants the motion.

### BACKGROUND

Plaintiffs and Defendants entered into an Asset Purchase Agreement ("APA") on January 30, 2006.[1] The APA contains an indemnity provision, which provides in part:

Sellers and the Shareholders, jointly and severally, shall indemnify, defend and hold harmless Buyer's Indemnified Persons, and each of them, from and against any Losses incurred or suffered by Buyer's Indemnified Persons, directly or indirectly, as a result of, relating to or arising from:

> (i) any breach of a representation or warranty made by Sellers herein ... [and]
>
> ...
>
> (iii) the Stand N Seal Matter; ...

(Aff. of Jason R. Asmus ("Asmus Aff.") ¶ 3, Ex. 1 at § 12.1(a) .) In addition, the APA prohibits any party from assigning its rights and obligations under the APA without prior written consent of the other parties. (Id. ¶ 3, Ex. 1 at § 14.7.)

This lawsuit involves a dispute regarding Defendants' contractual obligations under the APA and indemnification obligations under the APA and the Side Letter Agreement. On January 10, 2008, Plaintiffs brought this action in Ramsey County District Court, seeking a declaratory judgment regarding Defendants' indemnification obligations and damages for Defendants' alleged breaches of the APA. (Asmus Aff. ¶ 4, Ex. 2.) Defendants filed a Notice of Removal under 28 U.S.C. § § 1441 and 1446, alleging subject matter jurisdiction under the federal diversity statute, 28 U.S.C. § 1332. Plaintiffs now move to remand the action to state court, arguing that Defendants' removal was improper because complete diversity does not exist.

### DISCUSSION

### I. Standard of Review

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district court of the United States for the district and division embracing the place where such action is pending."If jurisdiction is based on diversity, the action can only be removed if complete diversity exists. 28 U.S.C. § 1332; 28 U.S.C. § 1441(b).

Pursuant to 28 U.S.C. § 1447(c), a party opposing removal may bring a motion requesting that the federal court remand

EXHIBIT
D

the case back to state court. The district court shall remand the case back to state court if it determines that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); *Martin v. Franklin Capital Corp.,* 126 S.Ct. 704, 707 (2005). On a motion to remand, the party seeking removal and opposing remand bears the burden of demonstrating federal jurisdiction. *In re Bus. Men's Assur. Co. of Am.,* 992 F.2d 181, 183 (8th Cir.1993). The Court should resolve any doubt as to the propriety of removal in favor of remand. *Id.*

### I. Diversity of the Parties

**\*2** In their notice of removal, Defendants allege that this Court has jurisdiction based on the diversity of the parties' citizenship. Diversity jurisdiction exists when each defendant is a citizen of a different State from each plaintiff. *Owen Equip. & Erection Co. v. Kroger,* 98 S.Ct. 2396, 2402 (1978); *Yeldell v. Tutt,* 913 F .2d 533, 537 (8th Cir.1990). When a case has been removed from state court, diversity must exist both at the time that the suit was commenced and when the petition for removal was filed. *Minn. Mining and Mfg. Co. v. Kirkevold,* 87 F.R.D. 317, 320 (D.Minn.1980).

Plaintiffs have submitted evidence that Roanoke's principal place of business is Aurora, Illinois. (Asmus Aff. ¶ 3, Ex. 2.) Therefore, Roanoke is an Illinois citizen for diversity of citizenship purposes. 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."). [2] Plaintiffs argue that complete diversity did not exist because both defendants CBRTT, Inc. ("CBRTT") and Richard F. Tripodi ("Tripodi") were also Illinois citizens at the time the lawsuit was commenced and/ or removed.

### A. CBRTT

CBRTT is an Illinois corporation. (Asmus Aff. ¶ 5, Ex. 2.) As such, it is an Illinois citizen for purposes of diversity jurisdiction. Defendants do not dispute this. Instead, Defendants contend that CBRTT's Illinois citizenship should not be considered because CBRTT is "an inactive corporation and a nominal party."(Defs.' Mem. of Law in Opp. to Plfs.' Mtn. to Remand ("Defs.' Opp. Mem.") at 7.) Defendants argue that CBRTT is dispensable for purposes of diversity jurisdiction.

Defendants claim that CBRTT terminated its business activities and assigned all assets to defendant BRTT, Inc. ("BRTT") on March 17, 2006, before this lawsuit was filed.

To substantiate this claim, Defendants rely on a Certificate of Corporate Secretary ("Certificate") that purports to show CBRTT's transfer of assets to BRTT on March 17, 2006. (Affidavit of Thomas K. Jones ("Jones Aff.") ¶ 6, Ex. 2.) The Court, however, has concerns about the validity of the Certificate. The Certificate, which appears to have been prepared by a lawyer at the law firm of Payne & Jones, contains an identification number that, when compared with two other documents prepared by the same law firm, casts serious doubt on its purported date of creation. It appears as though the Certificate was created after this suit was commenced in 2008. [3] Although the Court makes no ultimate determination with respect to the Certificate's validity, it declines to rely on the Certificate in determining whether diversity exists. On the record before it, the Court finds that CBRTT was a valid, existing Illinois corporation at the time that this lawsuit was commenced and removed. [4]

Defendants also rely heavily on *Stonybrook Tenants Assoc., Inc. v. Alpert,* 194 F.Supp. 552 (D.Conn.1961), in support of its argument that CBRTT is dispensable for purposes of diversity. In *Stonybrook,* the plaintiffs brought an action against multiple defendants to "enforce a written agreement entered into on August 17, 1959."*Id.* at 554.The defendants removed the case to federal court. *Id.* at 555.The plaintiffs filed a motion to remand, claiming that two corporate defendants were not diverse. *Id.* at 556.The Court denied the plaintiffs' motion, holding that the defendant corporations were dispensable and nominal parties and therefore did not destroy diversity. *Id.* at 560.The facts of *Stonybrook,* however, differ significantly with the facts of the present case.

**\*3** The agreement at issue in *Stonybrook* settled litigation regarding a housing development called Stonybrook Gardens. *Id.* at 554.Neither of the two corporate defendants, who were deemed to be nominal parties, had any interest in Stonybrook Gardens at the time of the 1959 agreement or at any time after. *Id.* at 558. [5] The Court reasoned:

Since neither of the corporate defendants had any interest in Stonybrook Gardens at the time the agreement was executed nor at any subsequent time, they have no interest in the claims asserted in this action which is essentially one to enforce the agreement of August 17, 1959.
*Id.* Here, however, CBRTT is a party to and has obligations under the APA, Escrow Agreement and Side Letter Agreement. In particular, CBRTT is a party to the APA and is jointly and severally liable for any indemnification

obligations owed to Plaintiffs. Thus, CBRTT is directly related to, and has an interest in, the subject matter of this lawsuit. Unlike the defendants in *Stonybrook,* it cannot be said that CBRTT is dispensable or should be disregarded for purposes of determining diversity jurisdiction.

For the above reasons, the Court finds that Defendants have failed to meet their burden of demonstrating federal jurisdiction over this action. CBRTT is an Illinois citizen. Defendants have offered no support for their argument that CBRTT should be disregarded in the jurisdictional analysis. Accordingly, CBRTT destroys diversity and the Court lacks jurisdiction over this action.

## B. Tripodi

Plaintiffs also argue that defendant Tripodi was an Illinois citizen at the time he was served with the Summons and Complaint on January 10, 2008. Defendants argue that Tripodi was an Arkansas citizen at the time this lawsuit was commenced.

An individual is a citizen of the state in which he or she is domiciled.*Kirkevold,* 87 F.R.D. at 320.A person's domicile is determined by the physical presence of the person in the place of claimed domicile and the intention of making it his or her present home. *Id.*"[T]here is a presumption in favor of an original or former domicile as opposed to an acquired one."*Coggins v. R.R.M. Carpenter,* 468 F.Supp. 270 (E.D.Pa.1979).[6] Once an individual establishes his domicile, he remains domiciled there until he legally acquires a new domicile. *Yeldell,* 913 F.2d at 537.There is no dispute that Tripodi was domiciled in Illinois prior to moving to Arkansas sometime in 2008. Thus, Tripodi will be deemed to be domiciled in Illinois unless he legally acquired a new domicile in Arkansas as of January 10, 2008.

On January 10, 2008, Tripodi was served at his home in Illinois. Defendants argue that Tripodi had already changed his domicile to Arkansas as of that date. The record establishes that Tripodi had purchased property and was building a house in Arkansas before being served. As to his presence in Illinois, Tripodi submitted an affidavit asserting the following:

> **\*4** On the day I was served with the Complaint in this case, I was physically present in the state of Illinois in order to complete the sale of my home and finish moving my belongings to Arkansas. Although I

was in the state of Illinois on this date, I had already started residing in the state of Arkansas and intended to make Arkansas my permanent home.

(Aff. of Richard F. Tripodi ("Tripodi Aff.") ¶ 7.) In addition, Defendants submit several documents purporting to establish that Tripodi was domiciled in Arkansas as of January 10, 2008. These documents include: (1) vehicle registrations issued on August 7, 2007, and January 30, 2008; (2) a copy of Tripodi's Arkansas driver's license, issued on January 30, 2008; (3) a December 18, 2007 estimate from a moving company that notes an Arkansas destination and a "load date" of January 10, 2008; (4) a January 1, 2008, cable agreement with an installation date of January 23, 2008; (5) an invoice billed to Tripodi in Arkansas, dated February 1, 2008; and (6) an Arkansas Voter Registration Application, dated February 25, 2008.

Although Tripodi asserts that he had "already started residing in the state of Arkansas" as of January 10, 2008, the record indicates that Tripodi still owned his Illinois residence as of January 10, 2008, and was physically present in that residence when served. Defendants themselves stated that Tripodi was "in the process of joining his wife and her niece in Arkansas" as of January 10, 2008. (Defs.' Opp. Mem. at 6.) In addition, many of the documents relied upon by Defendants are dated or relate to services provided *after* January 10, 2008. Therefore, these documents do not support Defendants' contention that Tripodi had changed domicile prior to the commencement of this lawsuit. In particular, the Arkansas Voter Registration Application relied upon by Defendants is not dated until February 25, 2008, and indicates that Tripodi was previously registered to vote in Illinois. In addition, the estimate from the moving company contains a "load date" of January 10, 2008. These documents suggest that Tripodi did not change domicile until sometime after January 10, 2008. Finally, the Court notes that Defendants have not submitted evidence of where Tripodi maintained his bank accounts or to which state he paid taxes in 2008. Such evidence would also be relevant to his place of domicile.

On the record before the Court, it is evident that Tripodi changed his domicile to Arkansas at some point in early 2008. However, the Court concludes that Defendants have not met their burden to show that this change in domicile occurred prior to January 10, 2008. Thus, the Court presumes that Tripodi was an Illinois resident as of January 10, 2008. Federal diversity jurisdiction, therefore, does not exist.

Because federal diversity jurisdiction does not exist, the Court grants Plaintiffs' motion to remand the case to state court.

### III. Attorney Fees and Costs

**\*5** Plaintiffs request an award of attorney fees and costs incurred bringing the present motion to remand. The Court can award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The standard for determining whether to award fees under § 1447(c) turns on the reasonableness of the removal. *Martin*, 126 S.Ct. at 711. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* The district courts retain discretion when deciding whether to award fees under § 1447(c). *Id.*

Here, Defendants lacked a reasonable basis for arguing that CBRTT should be disregarded in the Court's jurisdictional analysis. Taking into account CBRTT's undisputed Illinois citizenship, diversity jurisdiction clearly did not exist and removal was improper. Therefore, the Court holds that Plaintiffs are entitled to reasonable attorney fees and costs associated with bringing the Motion to Remand.

### CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Plaintiffs' Motion to Remand to State Court (Doc. No. 9) is **GRANTED.**

2. Plaintiffs' request for attorney fees and costs is **GRANTED.**

a. Absent stipulation of the parties with respect to the issue of attorney fees and costs, Plaintiffs shall submit an affidavit to the Court with a memorandum, not exceeding five pages, setting forth the request for attorney fees and costs within ten days of the date of this Order. Defendants will then have five days to submit a responsive memorandum, not exceeding five pages. The Court will reserve the right to proceed with or without oral argument at that time.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1924182

---

Footnotes

1    The parties also entered into a Side Letter Agreement and an Escrow Agreement, both dated March 17, 2006.
2    Defendants do not dispute that Roanoke is an Illinois citizen.
3    CBRTT did not formally file dissolution papers with the Illinois Secretary of State until February 8, 2008.
4    Defendants also argue that CBRTT's purported assignment of its assets to BRTT would constitute a breach of the agreement and would therefore be invalid as a matter of law. In light of the Court's findings above, it need not address this argument.
5    The 1959 agreement preserved a disclaimer by both corporate defendants of any interest in the Stonybrook Gardens property. *Id* . at 558. The corporate defendants were included in the 1959 agreement because they were required to execute certain releases and, having done so, had performed all duties under the agreement. *Id.*
6    This places a heavier burden on a party who is trying to demonstrate a change in domicile than on one who is trying to demonstrate the retention of an existing domicile. C. Wright, A. Miller & E. Cooper § 3612 at 535.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.